## JOSEPH DeMAIO
*vs.*
## ROBERT ANASTASIO

Superior Court      New Haven County      File No. 58828

MEMORANDUM FILED APRIL 17, 1941.

*Anthony A. E. DeLucia,* of New Haven, for the Plaintiff.

*John A. Mele,* of New Haven, for the Defendant.

McEVOY, J.   On the 24th day of April, 1939, at about 2:00 o'clock in the afternoon, the plaintiff, while engaged in his usual occupation as a WPA laborer, was assaulted and severly injured by the defendant.

The defendant was then 32 years of age and in prime physical condition.

The plaintiff was then nearly 50 years of age and in fair physical condition.

For about five years, prior to that date, the plaintiff had been employed in and about the City of New Haven on various WPA projects.

The records show that during the entire five-year period, no complaint had been lodged against the plaintiff for any cause and that he had worked continuously on WPA projects.

Prior to April 24, 1939, the plaintiff had lodged a complaint with the person in charge of the New Haven office of WPA construction to the effect that the defendant had absented himself from his WPA employment for more than three consecutive days in violation of the WPA regulations and upon the theory that, if the plaintiff or any other WPA employee had done this, the offender would have received a discharge ticket, commonly known as a "403."

Also, prior to that time, the plaintiff had attempted to direct the attention of his immediate superior to the claimed fact that his comrades were stealing supplies from various WPA jobs.

Upon receipt of these complaints by the plaintiff's superiors they taunted the plaintiff with his "disloyalty" and contemptuously called him a "squealer."

The defendant has pleaded a special defense in which he alleges that the plaintiff assaulted him and that he, the defendant, used no more force in repelling the assault than was necessary.

Just prior to the assault the defendant had left the job upon which he was supposed to be working; had journeyed to his

home, which was some distance away from the job, and there a person connected with the WPA supervising force informed the defendant that the plaintiff had lodged a complaint against him.

Immediately upon receipt of this information the defendant speedily sought out the plaintiff and found the plaintiff engaged in his usual employment and leaning over a wheelbarrow which was used by the plaintiff to supply material to his fellow workers.

Without warning or notification to the plaintiff, the defendant struck the plaintiff twice in the face, so that the plaintiff was knocked down and, in falling, the plaintiff's head came in contact with the wheelbarrow over which the plaintiff had been leaning, and with other hard substances.

The plaintiff immediately placed his hands over his face and, with difficulty, cried out and attempted to pursue the defendant, who ran away.

As the defendant ran away he threw over a fence some gray object or substance which he had held in his hand when he assaulted the plaintiff.

The defendant's version of the matter was that, as he approached the plaintiff, he observed, in the plaintiff's right hand, a large knife with a four-inch open blade and that, when the defendant observed it, he was about three feet distant from the plaintiff and that then the plaintiff raised the open knife as if to strike the defendant and the defendant in an attempt to "defend" himself, struck down the plaintiff's knife and followed up this "self-defense" with two well directed and effective blows upon the plaintiff's jaw.

Amongst other witnesses who were offered on behalf of the defendant was one Joseph Catanese, now a foreman for a private employer.

On and prior to April 24, 1939, Catanese was a foreman on various WPA projects.

Prior to April 24, 1939, the plaintiff had worked under Catanese as a laborer with a pick and shovel. While so employed Catanese retired the plaintiff from his labor with pick and shovel and appointed him as a "water boy" upon the suggestion of Catanese that the plaintiff pay to Catanese, for that

appointment, the sum of $50, in equal semi-periodic instalments of $5 each, and this payment of $50 was, accordingly, made by the plaintiff to Catanese upon these terms.

Upon the witness stand Catanese was a vehement, assertive witness with no apparent understanding of the meaning or nature of an oath.

Catanese outdid the perjury of the other witnesses offered on behalf of the defendant respecting the claimed habit of the plaintiff to carry and threaten others with a knife. His testimony was, substantially, that plaintiff, on other jobs, "showed a knife four or five times" and that, during the two years preceding this assault, the plaintiff was engaged in altercations with other WPA employees "three or four times a week."

Upon cross-examination, Catanese admitted that he never reported any of these claimed acts of violence on the part of the plaintiff to any superior; that he never recommended that the plaintiff be discharged; that he never discharged the plaintiff, although he claimed to have had ample authority to do so, and that, during the plaintiff's entire employment of about five years on WPA projects, not only was there no entry of such conduct upon the WPA records but that, under the WPA policy, it would have been requisite that such employee be immediately discharged.

On August 14, 1929, a little more than ten years prior to the day upon which the assault by the defendant upon the plaintiff was committed, the plaintiff was the accused in a criminal action, case No. 741, in the City Court of New Haven. At that time he was charged with breach of the peace, which involved the use of a knife. To that charge he pleaded guilty and was fined $100, which he paid in addition to costs of $9.42. That assault was committed upon a person who is not a litigant in this action nor a witness nor in any way connected with it.

Apparently, after the commission of the assault of April 24, 1939, the defendant learned that the plaintiff had used a knife upon another person more than ten years prior to April 24, 1939, and it may be that, due to that knowledge, the present defense was conjured up upon the old theory of "giving a dog a bad name."

Philip Henry Lynch, an officer of the New Haven Police Department, appeared upon this trial as a witness. He is a

calm, truthful, observant person and, although in the line of duty he made inquiries of all present, immediately after the assault, no mention of the presence or attempted use of a knife by the plaintiff was made to him by anyone. On the contrary, when Officer Lynch did inquire of those who were present at the place and time of the assault, they were strangely and unusually engrossed in their work.

On Saturday, April 22, 1939, two days before the assault, the plaintiff filed a complaint against the defendant at the Munson Street office of the WPA work in New Haven.

On that day the witness, Catanese, and the timekeeper employed upon other WPA jobs upon which the plaintiff had previously worked, called upon the plaintiff at his house. The record does not clearly show the purpose of this call nor the conversation, if any, which ensued between the plaintiff and Catanese.

It may, however, be reasonably inferred that the call of Catanese upon the plaintiff on that day was motivated by the complaint lodged by the plaintiff with the WPA authorities as to the defendant.

Upon the whole evidence, and from close observation of the witnesses upon the trial, it seems reasonable to conclude that the plaintiff, by reason of his complaint to his superiors, was *persona non grata* to his fellow workers and that the acts of the defendant in viciously assaulting the plaintiff did not meet with the disapproval of the plaintiff's coworkers.

The defendant has pleaded that he acted in self-defense in repelling the claimed "assault" of the plaintiff. This claim seems to be in line with that so frequently expressed of late by another aggressor of the present day as an excuse (euphemistically styled a "reason") for his assault upon people who happen to entertain ideas which differ from his.

It is as disturbing to consider that the defendant and his witnesses would have the temerity to concoct and attempt to perpetrate such perjury in a Connecticut court of justice as it is to assume that they could have believed that the trier would be so easily deceived as to place any credence in it.

After this assault the plaintiff was taken to a hospital in New Haven and admitted there at 2:25 p.m. on April 24, 1939.

The Roentgen rays of the plaintiff's face then taken showed that he sustained:

Fracture of the left mandible near its angle.

Fracture of right mandible posterior to symphysis.

On April 26, 1939, a surgical operation performed on the plaintiff required two hours.

Subsequently further operations were performed upon the plaintiff on April 29, 1939, June 17, 1939 and July 29, 1939, and, during the third and fourth operations, a number of the plaintiff's teeth were extracted.

After several weeks osteomyelitis set in on the left side of the plaintiff's face.

During the plaintiff's confinement at the hospital his life was in danger on several occasions and some of his temperatures were:

April 28, 1939—103 degrees

May 3, 1939—101 degrees

June 18, 1939—102 degrees

July 30, 1939—101 degrees

The plaintiff was discharged from the hospital on August 9, 1939, after having been treated there for 15- 3/7 weeks.

During this period the plaintiff, despite the excellent care and treatment which he received, suffered great pain and discomfort.

In an endeavor to mitigate the effect of the defendant's assault, the plaintiff has necessarily incurred expense for hospital care, medical and surgical care and nursing, and so forth, the reasonable amounts of which are as follows:

St. Raphael's Hospital—all expenses—15- 3/7 weeks .............................. $427

Medical services rendered by Dr. Quinn...... 300

Medical services rendered by Dr. Foley....... 300

On and prior to April 24, 1939, the plaintiff was employed and had an earning capacity of $60 per month. His injuries were such that, after April 24, 1939, he was unable to engage in any profitable employment for, at least, four months, so that he lost an opportunity to earn what he usually would have earned, $240, and he was damaged to that extent.

The issues are found in favor of the plaintiff, upon the complaint and upon the defendant's special defense.

Judgment may enter for the plaintiff to recover of the defendant $3,500 damages and his costs.